**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Bertin Hernandez-Florez,    Defendant. | No. CR-16-1650-TUC-JGZ (BGM)<br><br>**ORDER re Motion to Suppress** |

On January 5, 2017, Magistrate Judge Bruce G. Macdonald issued a Report and Recommendation ("R&R") in which he recommended that Defendant Bertin Hernandez-Florez' Motion to Suppress Statements as Involuntary (Doc. 39) be denied. (Doc. 41.) Defendant filed an Objection to the R&R. (Doc. 74.) For the reasons stated herein, the Court will adopt the R&R and deny Defendant's Motion to Suppress.

**STANDARD OF REVIEW**

The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the R&R. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998). If the Court rejects the credibility findings of the magistrate judge, a de novo hearing is required. *United States v. Ridgway*, 300 F.3d 1153, 1157 (9th Cir. 2002).

//

//

**FACTUAL BACKGROUND**

The factual background contained in Magistrate Macdonald's R&R (Doc. 71) is adopted as supplemented by the additional facts in this Order.

**DISCUSSION**

The Defendant objects to the Magistrate Judge's finding that Defendant's statements to United States Border Patrol Agent Robert Reynaga were voluntary and not the result of coercion by agents. The Court concludes that Defendant voluntarily waived his *Miranda* rights and that his statements were not coerced. Accordingly, the Court will deny Defendant's Motion to Suppress.

A defendant's constitutional rights are violated if his confession is obtained in violation of his *Miranda* rights or if interrogation tactics render the confession involuntary. *See Dickerson v. United States*, 530 U.S. 428, 432 (2000). *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal proceedings. Statements made while a defendant is in "custody or otherwise deprived of [his] freedom of action in any significant way" which are not preceded by *Miranda* warnings are inadmissible in evidence. *Id.* at 444. For incriminating statements obtained during a custodial interrogation to be admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *See Id.* at 479. A waiver of *Miranda* rights "is knowing and intelligent if, under the totality of the circumstances, it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citations and quotations omitted). There is a presumption against waiver, and the Government bears the burden of proving a valid waiver by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir. 1986).

In considering the totality of the circumstances, factors to consider include the presence of any police coercion, the length of the interrogation, its location and its

continuity, whether the police advised the suspect of his rights, and whether there were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "In short the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort." *Haynes v. State of Washington*, 373 U.S. 503, 513-14 (1963). An officer who attempts to pressure a defendant into changing his mind about remaining silent, and into talking without counsel to his interrogators, violates that defendant's Fifth Amendment rights. *See Collazo v. Estelle*, 940 F.2d 411, 419-20 (9th Cir. 1991).

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant is deprived of due process if his conviction is founded upon an involuntary confession. *See Dickerson*, 530 U.S. at 432. To ensure due process, the test for determining the voluntariness of a suspect's confession is whether, considering all the circumstances, the government obtained the statement by physical or psychological coercion or by inducement so that the suspect's will was overcome. *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).

Here, Defendant acknowledges that he was twice given his *Miranda* rights and signed a waiver form waiving his *Miranda* rights, but Defendant claims that the inculpatory statements made during his interview were the product of coercive interrogation. Specifically, Defendant alleges that his confession was not voluntary because in order to coerce Defendant into making inculpatory statements, Agent Reynaga: (1) manipulated Defendant's religious beliefs; (2) promised Defendant leniency; (3) referred to Defendant as a victim; and (4) suggested that Defendant could lose his immigration status if he did not cooperate. After review of the record, including the transcript of the interview, and considering the totality of the circumstances, the Court

rejects Defendant's claim that his statement was the product of coercion.[1]

### 1. Agent Reynaga's references to Defendant's religion were not coercive

Defendant argues that Agent Reynaga coerced Defendant into making a statement by repeatedly referring to God and the Virgin Mary during the interview. Having reviewed the transcript of Agent Reynaga's interview of Defendant, the Court concludes that Defendant's will was not "overcome" by Agent Reynaga's references to Defendant's religion. Agent Reynaga testified that Defendant referred to God at the beginning of the interview, and therefore Agent Reynaga referred to God and the Virgin Mary during questioning in order to build rapport with Defendant. (TR 12/7/16, pg. 12, line 10 – pg. 13, line 10.) Agent Reynaga's references to Defendant's religion were not extensive, nor were they coercive. *See Berghuis v. Thompkins*, 560 U.S. 370, 387 (2010) (agent who questioned defendant's religious beliefs did not render defendant's statement involuntary; the Fifth Amendment privilege is not concerned with "moral and psychological pressures to confess emanating from sources other than official coercion.").[2]

### 2. Agent Reynaga did not promise Defendant leniency in exchange for his statement

Defendant contends that Agent Reynaga extracted Defendant's confession by promising Defendant leniency. During the interview, Agent Reynaga referred to being

---

[1] Defendant asserts that the Magistrate Judge automatically found Defendant's statements to be voluntary and not the result of coercion because Defendant was read and subsequently waived his *Miranda* rights. The Court disagrees with this characterization and notes that the Magistrate Judge separately considered each claim of coercion.

[2] Defendant's reliance on *Brewer v. Williams*, 430 U.S. 387 (1977) is not persuasive. Contrary to Defendant's assertion, *Brewer* does not hold that a confession is involuntary if it is obtained through references to the defendant's religious beliefs. In *Brewer*, the United States Supreme Court held that a police officer's statement to the defendant that the victim was entitled to a Christian burial was tantamount to interrogation such that the defendant was entitled to the assistance of counsel at the time he made the incriminating statements. *Brewer*, 430 U.S. at 401. Defendant is not asserting a violation of his right to counsel in this case. Defendant also cites to *Gessner v. United States*, 354 F.2d 726 (10th Cir. 1965) and *People v. Montano*, 226 Cal. App. 3d 914 (1991); neither of these cases is factually similar to or binding on this Court.

able to write in his report that Defendant "behaved well" and cooperated. (TR 12/7/16, pg. 31.) Agent Reynaga also stated that the judge and attorneys would see his report. (TR 12/7/16, pg. 60.) When Defendant stated that he was concerned about losing his immigration status, Agent Reynaga responded by saying "then help me out … give me something … I'll talk to the attorney." (TR 12/7/16.) Agent Reynaga's statements did not amount to promises of leniency. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1367 (9th Cir. 1988) (finding no coercion where agent did not promise defendant any tangible benefit such as no prosecution, reduced charges, or a recommendation of a lenient sentence). Agent Reynaga suggested to Defendant that if Defendant cooperated, Agent Reynaga would note Defendant's cooperation in his report and bring it to the attention of an unidentified attorney. "An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *Leon Guerrero*, 847 F.2d at 1366.[3]

**3.    Agent Reynaga's references to Defendant as a victim were not coercive**

Defendant argues that Agent Reynaga coerced Defendant into making a confession by repeatedly referring to Defendant as a "victim." According to Defendant, these references "lulled [Defendant] into a false sense of security and coerced inculpatory statements from him." (Doc. 39, pg. 9.) Agent Reynaga testified that he believes load carriers such as Defendant are victims of the smuggling organization, and that he referred to Defendant as a victim in an attempt to encourage Defendant to give up the names of others with higher positions in the smuggling organization. (TR 12/7/16, pg. 13, line 24 – pg. 14, line 18; pg. 32, lines 12-21.) Nothing in the transcript of Defendant's interview

---

[3] In support of his argument regarding leniency, Defendant relies on *Bram v. United States*, 168 U.S. 532, 542–43 (1897), specifically language in *Bram* prohibiting "implied promises, however slight." The United States Supreme Court has expressly departed from the standard set forth in *Bram*, stating, "it is clear that this passage from *Bram*, … under current precedent does not state the standard for determining the voluntariness of a confession." *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991).

suggests that Defendant's will was "overcome" by these references. Defendant willingly offered information regarding the events leading up to his arrest prior to any reference by Agent Reynaga to Defendant being a "victim." There was nothing subversive in Agent Reynaga's referring to Defendant as a victim. On the first occasion that Agent Reynaga referred to Defendant as a victim, Agent Reynaga explained his motivation, stating: "I want the other people that were there, that told you, 'Come here, and go pick up those guys." (Doc. 39-1, pg. 36.)  Defendant's claim that Agent Reynaga's description of Defendant as a victim lulled Defendant into a false sense of security is belied by the fact that Defendant ultimately did not provide Agent Reynaga with the specific co-conspirator information that Agent Reynaga was hoping to obtain. Toward the end of the interview, after Defendant had provided limited information about the smugglers who directed him, Agent Reynaga said "I need good information and – and you aren't talking to us with good information." (Doc. 39-1, pg. 76.)  Defendant did not provide any additional information and the interview ended shortly thereafter.

**4.  Agent Reynaga's response to Defendant's statement about Defendant's immigration status was not coercive**

Defendant contends that Agent Reynaga coerced Defendant by telling Defendant that Defendant could "keep his papers" in exchange for a confession or incriminating information. This argument incorrectly summarizes the exchange between Defendant and Reynaga. Defendant raised the issue of his immigration status unsolicited, interrupting Agent Reynaga and stating "I don't want to lose my papers." (Doc. 39-1, pg. 75.) In response to Defendant's statement, Agent Reynaga said "then help me out." (*Id*.) That was the full extent of the exchange between the parties on the subject of Defendant's immigration status. The Court finds nothing coercive in Agent Reynaga's response, particularly in light of the fact that Defendant did not offer any substantive information about the smuggling organization after Agent Reynaga said "then help me out."

//

**CONCLUSION**

Upon review of the record, and considering the totality of the circumstances of Defendant's interview, the Court concludes that Defendant's confession was made freely, voluntarily, and without compulsion or inducement. Based on the Court's independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1. The Report and Recommendation (Doc. 71) is ADOPTED;
2. Defendant's Motion to Suppress (Doc. 39) is DENIED.

Dated this 17th day of January, 2017.

Honorable Jennifer G. Zipps
United States District Judge